IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STACY H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:25-cv-00048-BT |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Stacy H.'s[1] civil action seeking judicial review

under 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social

Security. For the reasons explained below, the Commissioner's decision is

**REVERSED**.

*Background*

Plaintiff alleges that she is disabled due to lumbago with sciatica, obsessive

compulsive disorder (OCD), anxiety, depression, bipolar disorder, and severe

migraines. Admin. R. at 101 (ECF No. 10-1).[2] Plaintiff was born in 1975 and alleges

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May
1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and
Immigration Opinions issued by the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.
[2] Citations to the administrative record refer to the CM/ECF page numbers at the
top of each page rather than page numbers at the bottom of each filing.

an amended disability onset date of October 16, 2021. *Id.* at 47, 101. Plaintiff has a high school education and completed a year of college. *Id.* at 48–49.

Plaintiff applied for disability insurance benefits (DIB) on January 20, 2022, and supplemental security income (SSI) on April 1, 2022, under Title II and XVI of the Social Security Act (the "Act"). *Id.* at 260–61 (application for DIB), 272–78 (application for SSI). Her claims were denied initially and upon reconsideration. *Id.* at 131, 149. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a video hearing on December 7, 2023. *Id.* at 165 (request for hearing), 45 (consenting to video hearing).

On February 23, 2024, the ALJ issued a decision finding that Plaintiff has not been under a disability within the meaning of the Act from her alleged amended onset disability date through the date of the decision, and thus not entitled to DIB or SSI. *Id.* at 35. As an initial matter, the ALJ found that Plaintiff met the insured status requirements under the Act through December 31, 2021. *Id.* at 26. Using the five-step sequential evaluation, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since her alleged amened onset disability date. *Id.* At the second step, the ALJ noted that Plaintiff experienced the following severe impairments: lumbago with sciatica, migraine headaches, bipolar disorder, dysthymic disorder, post-traumatic stress disorder (PTSD), and agoraphobia. *Id.*

At the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairment in appendix 1 of the social security

2

regulations. *Id.* at 27. In considering whether Plaintiff met the "paragraph B" criteria, the ALJ determined that her severe mental impairments (bipolar disorder, dysthymic disorder, PTSD, and agoraphobia) resulted in "moderate" limitations in the mental functioning areas of "interacting with others," "concentrating, persisting or maintaining pace," and "adapting or managing oneself." *Id.* at 27–28. "Moderate limitation" means that her functioning in these areas independently, appropriately, effectively, and on a sustained basis is only "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.00(F)(2)(c).[3] Specifically regarding "interacting with others," the ALJ explained she found that the evidence, including records of examinations and Plaintiff's own testimony, did not support further limitations. Admin. R. at 28 (ECF No. 10-1).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC)

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] is limited to occasional climbing ramps/stairs; no climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; capable of concentrating, persisting, and maintaining pace with detailed but not complex instructions; can tolerate occasional interaction with coworkers, supervisors and the public; and can adapt to occasional changes in the work routine.

---

[3] "Interacting with others" refers to the abilities to relate to and work with supervisors, co-workers, and the public; and examples include: "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.00(E)(2).

*Id.* at 29. Finally at step five, relying on the testimony of a vocational expert (VE), the ALJ determined that Plaintiff had the ability to perform the jobs of election clerk, charge account clerk, and call out operator, and that such jobs existed in significant numbers in the national economy. *Id.* at 34.

Plaintiff appealed the ALJ's decision to the Appeals Council. *Id.* at 16. The Appeals Council found no "basis for changing the [ALJ]'s decision." *Id.* at 6. Plaintiff then filed this action in federal district court.

### *Legal Standard*

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and whether the proper legal standards were used. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). The reviewing court does "not reweigh the evidence, try the issues *de novo*, or substitute" its own judgment, but scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. The Court "may affirm only on the grounds

that the Commissioner stated for [her] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

### *Analysis*

On appeal, Plaintiff makes two arguments. First, Plaintiff contends that the ALJ failed to consider the "total limiting effects" of Plaintiff's impairments. Pl.'s Br. at 3 (ECF No. 13). Specifically, Plaintiff avers that the ALJ erroneously found that Plaintiff's self-described limitations were inconsistent with the medical evidence. *Id.* at 4–6. The Commissioner counters that the ALJ acknowledged Plaintiff's self-described limitations, and the RFC determination is supported by substantial evidence. Def.'s Br. at 2–4 (ECF No. 15).

Second, Plaintiff argues that the "ALJ's finding that [Plaintiff] could only occasionally tolerate social interaction in the workplace is internally inconsistent with her finding that Plaintiff could perform jobs requiring frequent talking." Pl.'s Br. at 10 (ECF No. 13). In response, the Commissioner states that "the ALJ properly relied upon the vocational expert's testimony[.]" Def's Br. at 8 (ECF No. 15). As Plaintiff's second argument is dispositive and requires remand, the Court pretermits discussion of Plaintiff's first argument.

At step five of the sequential analysis, the ALJ may consult a VE to explain the types of jobs that a claimant can perform despite her impairments. 20 C.F.R. § 404.1566(e). "A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129,

132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*

"An ALJ in a hearing such as [Plaintiff's] has an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT before relying on VE evidence to support a determination of not disabled." *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (cleaned up); *see also* SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000) (requiring ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)"). When there is a conflict between VE evidence and the DOT, neither the DOT nor the VE evidence automatically "trumps" the other. SSR 00-4p, 2000 WL 1898704, at *2. Rather, the ALJ must resolve the conflict by determining whether the VE's explanation is reasonable and provide a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in her decision how any conflict that has been identified was resolved. *Id.*

"A direct conflict between VE testimony and the DOT may arise when, as here, the VE's testimony concerning the exertional or skill level of a job is facially different from the description of the job found in the DOT." *Eileen D. v. Commissioner*, 2019 WL 4648259, at *3 (N.D. Tex. Sept. 6, 2019) (Rutherford, J.)

(citing *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)), *adopted by* 2019 WL 4643648 (N.D. Tex. Sept. 24, 2019) (Godbey, J.). In this case, the VE testified at the administrative hearing that a hypothetical individual who has the RFC to, among other things, "tolerate occasional interaction with co-workers, supervisors and the public" could perform the jobs of election clerk (DOT 205.367-030), charge account clerk (DOT 205.367-014), and call out operator (DOT 237.367-014). Admin. R. at 34, 64–65 (ECF No. 10-1). However, the DOT and SCO provide that these jobs require more than occasional social interaction with the public and coworkers.[4] Indeed, the SCO provides that *all* the jobs identified by the VE require "frequent" talking. *See* Pl.'s Reply, Ex. 1 at 2–4 (ECF No. 16-1). "Talking" means "[e]xpressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoken instructions to other workers accurately, loudly, or quickly." *Id.* at 5.

For example, the DOT description for an election clerk provides that an individual performs the following duties during elections:

> Compiles and verifies voter lists from official registration records. *Requests identification of voters* at polling place. Obtains signatures and records names of voters to prevent voting of unauthorized persons. Distributes ballots to voters and *answers questions* concerning voting procedure. Counts valid ballots and prepares official reports of election results.

---

[4] The SCO defines "occasionally" to mean the activity or condition exists up to 1/3 of the time; "frequently" means the activity or condition exists from 1/3 to 2/3 of the time. Pl.'s Reply, Ex. 1 at 6 (ECF No. 16-1).

DOT 205.367-030 (emphasis added); *see also* Pl.'s Reply, Ex. 1 at 3 (SCO providing that election clerk position requires frequent talking). Similarly, the description for the charge account clerk job requires frequent customer contact, as the individual performing the job:

> *Interviews customers* applying for charge accounts[.] *Confers with customer* to explain type of charge plans available. *Assists customer* in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and *notify customer* of acceptance or rejection of credit . . . . May verify entries and correct errors on charge accounts . . . , using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

DOT 205.367-014 (emphasis added); *see also* Pl's Reply at 2 (ECF No. 16-1) (SCO providing that the charge account clerk position requires frequent talking). And finally, the DOT includes the following description of the call out operator position:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. *Telephones subscriber* to relay requested information or submits data obtained for typewritten report to subscriber.

DOT 237.367-014 (emphasis added); *see also* Pl.'s Reply at 4 (ECF No. 16-1) (SCO providing that the call out operator position requires frequent talking). Thus, there is a direct conflict between the DOT and SCO descriptions of the jobs recommended by the VE, which require frequent talking and social interaction, and the ALJ's RFC which limits Plaintiff to only occasional social interaction. *See*

*Kevin T. v. Commissioner*, 2025 WL 678544, at *3, n.6 (N.D. Tex. Mar. 3, 2025)

(Rutherford, J.) (explaining that a "direct and obvious" conflict exists "when the VE's testimony conflicts with the DOT"); *Eileen D.*, 2019 WL 4648259, at *4 (finding a direct conflict when jobs required frequent social interaction but the plaintiff was limited to occasional contact with the public or coworkers); *Davis v. Kijakazi*, 2022 WL 18396221, at *5 (S.D. Tex. May 2, 2022) (finding a discrepancy between VE testimony and the DOT regarding occasional contact with others).

When a direct conflict exists between the DOT and the VE's testimony, the ALJ must explain or resolve the conflict. *Kevin T.*, 2025 WL 678544, at *3. If the ALJ does not resolve the conflict, the weight of the VE's testimony is lessened such that "reversal and remand for lack of substantial evidence usually follows." *Id.* at *3 (quoting *Osborne v. Colvin*, 2015 WL 4755488, at *7 (N.D. Tex. Aug. 12, 2015) (Horan, J.)). A remand is appropriate if the plaintiff establishes that she was prejudiced by the ALJ's error to resolve the conflict, which can be achieved by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Although the ALJ relied on the VE's testimony to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, nothing in the record explains how such jobs can be performed by someone who is limited to occasional social interaction. And the ALJ did not resolve the conflict in her decision. *See* Admin. R. at 35 (ECF No. 10-1) ("Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent

9

with the information contained in the [DOT].”); SSR 00-4p, 2000 WL 1898704, at *2 (“The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.”). The ALJ asked the VE whether any conflicts existed between the VE’s testimony and the DOT. Admin. R. at 65 (ECF No. 10-1). Although the VE testified that his testimony was consistent with the DOT, this testimony itself directly conflicts with the DOT and SCO. Rather, it appears that neither the ALJ nor the VE were aware of the conflict. As a result, substantial evidence does not support the ALJ’s determination at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

The Commissioner relies on *Laurent v. Astrue*, 366 F. App’x 559 (5th Cir. 2010) (per curiam) and *Johnny H. v. Kijakazi*, 2022 WL 16935252 (N.D. Tex. Oct. 20, 2022), *adopted by* 2022 WL 16927797 (N.D. Tex. Nov. 14, 2022) (Cummings, J.) to support its argument that the ALJ properly relied on the VE’s testimony when making her disability determination. Def.’s Br. at 7–8 (ECF No. 15). The Commissioner correctly notes that the Fifth Circuit in *Laurent* stated that the “DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant’s limitations on his or her ability to perform a particular job.” *Laurent*, 366 F. App’x at 561. However, in the sentence immediately before this quotation, the Fifth Circuit reiterates that “when a VE’s testimony conflicts with the DOT, ‘the ALJ may

10

rely on the vocational expert's testimony provided that the record reflects an adequate basis for doing so.'" *Id.* (quoting *Carey,* 230 F.3d at 146). Nothing in the record indicates Plaintiff can perform a job that requires frequent talking, and the ALJ apparently agreed when she limited Plaintiff's RFC to occasional social interaction.

In *Johnny H.*, the ALJ similarly limited the plaintiff to occasional interaction with supervisors, coworkers, and the general public, but adopted jobs requiring frequent talking. *Johnny H.*, 2022 WL 16935252, at *1, *10. The plaintiff in *Johnny H.* argued that "the amount of talking . . . required for the jobs adopted conflicts with [p]laintiff's RFC limitations[.]" *Id.* at *10. The *Johnny H.* court affirmed the ALJ's determination and found that "the ALJ was permitted to rely on the VE's testimony, and the [p]laintiff's subjective reading of the DOT's job descriptions does [not] support a conflict." *Id.*

However, the Court finds this case distinguishable for the reasons articulated by Plaintiff. *See* Pl.'s Reply at 6 (ECF No. 16). The court in *Johnny H.* dismissed the plaintiff's argument because it was "unclear how the Plaintiff conclude[d] that these jobs require frequent talking" and thus resulted in an alleged conflict. *Johnny H.*, 2022 WL 16935252, at *10. The court noted that the plaintiff "trie[d] to support [his] argument with footnotes to descriptions in SSR 83-12—although upon further review it is clear [the plaintiff] meant SSR 83-10" and that SSR 83-10 did not mention the jobs the ALJ adopted, nor does it discuss how often those jobs required talking. *Id.* at *9. By contrast, Plaintiff here

presented evidence that the VE's recommended jobs require frequent talking, which directly conflicts with the ALJ's RFC determination and the DOT and SCO. *See* Pl.'s Reply, Ex. 1 at 2–4 (ECF No. 16-1). Again, although the *Johnny H.* court recognized that "the categorical DOT job descriptions are neither comprehensive nor exclusively probative of a claimant's ability to perform a particular job," this does not dispose of the ALJ's duty to resolve conflicts between the VE's testimony and the DOT and SCO. *Johnny H.*, 2022 WL 16935252, at \*10 (quoting *Carey*, 230 F.3d at 144). By failing to identify and address the conflict between the VE's testimony and the DOT, the ALJ erred.

Nevertheless, the court "will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Graves*, 837 F.3d at 592–93 (quoting *Carey*, 230 F.3d at 142). The error in this case certainly prejudiced Plaintiff. *See Owen v. Astrue*, 2011 WL 3348064, at \*9 (N.D. Tex. May 12, 2011) (Cureton, J.) (finding that the "ALJ's failure to abide by SSR 00-4p prejudiced [the plaintiff]"), *adopted by* 2011 WL 3347921 (N.D. Tex. Aug. 2, 2011) (Means, J.). "Had the ALJ fully developed the record and further inquired into the conflict, additional evidence may have emerged that might have led to a different decision." *Eileen D.*, 2019 WL 4648259, at \*5. The ALJ likely would have realized that Plaintiff's RFC precluded her from performing any of the jobs recommended by the VE. However, the court is not permitted to resolve a conflict that the ALJ did not consider, and consequently, the case must be remanded. *Id.* (collecting cases and remanding ALJ

decision where there was no explanation for conflict between VE testimony and the DOT); *Owen*, 2011 WL 3348064, at \*9 (finding that remand was appropriate when ALJ failed to abide by SSR 00-4p); *Davis*, 2022 WL 18396221, at \*7 (finding that the plaintiff made the requisite showing of prejudice because "the ALJ's failure to develop the record could have altered the result").

### *Conclusion*

For the reasons stated, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case to the Commissioner for further proceedings.

**SO ORDERED.**

March 27, 2026.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE